# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| |
|---|
| **ZHEJIANG DINGLI MACHINERY CO., LTD.,**<br><br>    **Plaintiff,**<br><br>  **v.**<br><br>**UNITED STATES,**<br><br>    **Defendant,**<br><br>  **and**<br><br>**COALITION OF AMERICAN MANUFACTURERS OF MOBILE ACCESS EQUIPMENT,**<br><br>    **Defendant-Intervenor.** |

**Before: Hon. M. Miller Baker, Judge**

**Court No. 24-00221**

## <u>DEFENDANT-INTERVENOR'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>

**Timothy C. Brightbill, Esq.**
**Laura El-Sabaawi, Esq.**
**Enbar Toledano, Esq.**
**Theodore P. Brackemyre, Esq.**

**WILEY REIN LLP**
**2050 M Street, NW**
**Washington, DC 20036**
**(202) 719-7000**

*Counsel to the Coalition of American Manufacturers of Mobile Access Equipment*

**Dated:  April 23, 2026**

Ct. No. 24-00221                                    PUBLIC DOCUMENT

## TABLE OF CONTENTS

PAGE

I.    INTRODUCTION ................................................................... 1

II.   STATEMENT PURSUANT TO RULE 56.2 .............................. 1

    A.   Administrative Determination Under Review ...................... 1

    B.   Issues Presented for Review ................................................. 2

III.  SUMMARY OF THE ARGUMENT ........................................... 2

IV.   ARGUMENT .......................................................................... 5

    A.   Commerce Reasonably and Lawfully Selected
        Turkey as the Primary Surrogate Country ........................... 5

    B.   Dingli Lacks Standing to Challenge Commerce's
        Use of Cohen's $d$ ................................................................. 7

    C.   Commerce Lawfully Deducted Section 301 Duties
        from U.S. Price ................................................................... 13

V.    CONCLUSION ..................................................................... 21

Ct. No. 24-00221                                              **PUBLIC DOCUMENT**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Argentum Pharms. LLC v. Novartis Pharms. Corp.*,
    956 F.3d 1374 (Fed. Cir. 2020) .................................................... 11, 12

*Best Mattresses Int'l Co. Ltd. v. United States*,
    622 F. Supp. 3d 1347 (Ct. Int'l Trade 2023)................................... 14

*Deacero S.A.P.I de C.V. v. United States*,
    No. 20-03924, 2021 WL 6067010 (Ct. Int'l Trade Dec. 20,
    2021)..................................................................................................... 23

*Home Prods. Int'l, Inc. v. United States*,
    36 CIT 665, 837 F. Supp. 2d 1294 (2012) ........................................... 10

*Jiaxing Bro. Fastener Co. v. United States*,
    961 F. Supp. 2d 1323 (Ct. Int'l Trade 2014)..................................... 22

*Jinko Solar Imp. & Exp. Co. v. United States*,
    701 F. Supp. 3d 1367 (Ct. Int'l Trade 2024)............................. 17, 19

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ..11, 12, 13, 14

*Marmen Inc. v. United States*,
    134 F.4th 1334 (Fed. Cir. 2025)........................................... 5, 9, 10, 13

*Neimenggu Fufeng Biotechnologies Co. v. United States*,
    741 F. Supp. 3d 1354 (Ct. Int'l Trade 2024)............................... 14, 17

*Novolipetsk Steel Pub. Joint Stock Co. v. United States*,
    483 F. Supp. 3d 1281 (Ct. Int'l Trade 2020)..................................... 12

*Shanghai Tainai Bearing Co. v. United States*,
    658 F. Supp. 3d 1269 (Ct. Int'l Trade 2023).................... 15, 16, 18, 19

Ct. No. 24-00221                                                    PUBLIC DOCUMENT

*Shanghai Tainai Bearing Co. v. United States,*
   No. 23-00020, 2024 WL 5154030 (Ct. Int'l Trade Dec. 18,
   2024) ................................................................................ 17

*SolarWorld Americas, Inc. v. United States,*
   962 F.3d 1351 (Fed. Cir. 2020) ........................................ 12

*Spokeo, Inc. v Robins,*
   578 U.S. 330, 136 S. Ct. 1540, 194 L.Ed.2d 635 (2016) ..................... 11

*Tianjin Magnesium Int'l Co. v. United States,*
   No. 25-00002, 2026 WL 711052 (Ct. Int'l Trade Mar. 13,
   2026) ............................................................................ 3, 9

*Ticaret A.S. v. United States,*
   63 F.4th 25 (Fed. Cir. 2023) .............................. 6, 15, 18, 19

*Timken Co. v. Regan,*
   5 CIT 4 (1983) .................................................................. 12

*United States v. Great Am. Ins. Co. of New York,*
   738 F.3d 1320 (Fed. Cir. 2013) ........................................ 10

*United States v. Zannino,*
   895 F.2d 1 (1st Cir. 1990) ................................................ 11

*Warth v. Seldin,*
   422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) ...................... 12

*Wheatland Tube Co. v. United States,*
   495 F.3d 1355 (Fed. Cir. 2007) ........................................ 18

## Statutes

5 U.S.C. § 553 .................................................................... 22

19 U.S.C. § 1673 ................................................................ 17

19 U.S.C. § 1677a(c)(2)(A) ...................................... 18, 20, 22

19 U.S.C. § 1677c(b) .......................................................... 22

Ct. No. 24-00221                                                  PUBLIC DOCUMENT

**Administrative Materials**

*Certain Mobile Access Equipment and Subassemblies Thereof
From the People's Republic of China,*
89 Fed. Reg. 88,730 (Dep't Commerce Nov. 8, 2024) ...........................1

*Crystalline Silicon Photovoltaic Cells, Whether Or Not As-
sembled Into Modules,*
88 Fed. Reg. 43,302 (Dep't Commerce July 7, 2023)................... 20, 22

*Stainless Steel Wire Rod from Korea,*
69 Fed. Reg. 19,153 (Dep't Commerce Apr. 12, 2004).......................18

PUBLIC DOCUMENT

# GLOSSARY

**APA**

Administrative Procedure Act

**Coalition**

Coalition of American Manufacturers of Mobile Access Equipment

**Commerce**

U.S. Department of Commerce

**Dingli**

Zhejiang Dingli Machinery Co., Ltd.

**IDM**

Issues and Decision Memorandum

**WTO**

World Trade Organization

**PUBLIC DOCUMENT**

## I.   INTRODUCTION

Pursuant to USCIT Rule 56.2 and the Court's amended scheduling order, Defendant-Intervenor the Coalition of American Manufacturers of Mobile Access Equipment ("Coalition") respectfully submits the following brief in opposition to Plaintiff Zhejiang Dingli Machinery Co., Ltd.'s ("Dingli") motion for judgment on the agency record in the above-captioned action. Pl.'s Corrected Mot. for J. on the Agency R. (Aug. 12, 2025), ECF No. 34 ("Dingli Br.").

## II.   STATEMENT PURSUANT TO RULE 56.2

### A.   Administrative Determination Under Review

The administrative determination under review is the U.S. Department of Commerce's ("Commerce") final determination in the administrative review covering the period April 13, 2022, through March 31, 2023, of the antidumping duty order on *Certain Mobile Access Equipment and Subassemblies Thereof from the People's Republic of China*. The final results were issued on November 4, 2024, and published in the *Federal Register* on November 8, 2024. *See Certain Mobile Access Equipment and Subassemblies Thereof From the People's Republic of China*, 89 Fed. Reg. 88,730 (Dep't Commerce Nov. 8, 2024) (final results of antidumping duty

1

admin. rev.; 2022-2023), P.R. 298, Appx___ ("Final Results") and accompanying Issues and Decision Memorandum, P.R. 294, Appx___ ("IDM").

### B.   Issues Presented for Review

1.   Was Commerce's selection of Turkey as the primary surrogate country supported by substantial evidence and in accordance with law?

2.   Does Dingli have standing to challenge Commerce's use of the Cohen's $d$ test in its differential pricing analysis?

3.   Was Commerce's deduction of section 301 duties from U.S. sales prices supported by substantial evidence and in accordance with law?

## III.   SUMMARY OF THE ARGUMENT[1]

Dingli raises three challenges to the Final Results underlying this appeal. *First*, Dingli argues that Commerce's selection of Turkey as the primary surrogate country in the underlying administrative review was unsupported by substantial evidence and not in accordance with law. *See* Dingli Br. at 12–55. *Second*, Dingli contends that Commerce unlawfully

---

[1]   For purposes of the issues in this response brief, the Coalition joins in the Statement of Facts and recitation of the applicable Standard of Review provided in the United States' opposition brief. *See* Def.'s Resp. to Consolidated Pls.' Rule 56.2 Mot. for J. on the Agency R. (Mar. 4, 2026), ECF No. 41 ("DOJ Br.") at 3–15, 19–21.

relied on the Cohen's *d* test in applying its differential pricing methodology. *See id.* at 55–56. *Third*, Dingli contends Commerce unlawfully deducted Section 301 duties from Dingli's U.S. sales prices. *See id.* at 56–69. For the reasons below, and the further reasons explained in the United States' opposition brief, Dingli's appeal is without merit, and the agency determinations challenged therein should be affirmed.

*First*, Commerce explained in its IDM that Turkey satisfied the statutory requirements for selection as a surrogate country, and that Dingli's criticisms of Turkey and Turkish record data were unavailing. *See* IDM at cmt. 1, Appx___; DOJ Br. at 27–35. As both Commerce and this Court have explained, hyperinflation is not itself grounds to disqualify a surrogate country. *See* IDM at cmt. 1 Appx___; *accord Tianjin Magnesium Int'l Co. v. United States*, No. 25-00002, 2026 WL 711052, at *11 (Ct. Int'l Trade Mar. 13, 2026). And Dingli failed, in any event, to demonstrate that any relevant record data had been distorted by Turkey's inflationary environment or by countervailable subsidies. *See* IDM at cmt. 1, cmt. 3, Appx___, Appx___. As such, Turkey provided the best information available over Bulgaria, which Dingli preferred as primary surrogate country, but whose record data was incomplete. *Id.* at cmt. 3, Appx___.

3

*Second*, Commerce explained in its IDM why Dingli's challenge to Commerce's use of the Cohen's $d$ test in its differential pricing analysis is moot. Specifically, Dingli argues that the U.S. Court of Appeals for the Federal Circuit held in *Marmen Inc. v. United States*, 134 F.4th 1334 (Fed. Cir. 2025) that Commerce may not rely on the Cohen's $d$ test when the statistical assumptions underlying the test have not been met. *See* Dingli Br. at 55–56. In failing to develop this argument, Dingli has waived it. But, in any event, Commerce explained in its IDM that the application of Cohen's $d$ in this review had no impact at all on the final results. *See* IDM at 43, Appx___; *see also* DOJ Br. at 55–60. Because Dingli has not shown that the statistical assumptions underlying Cohen's $d$ were unmet in this case, or that Commerce's use of the Cohen's $d$ test impacted the final results, Dingli lacks standing to assert this claim.

*Third*, Commerce correctly explained that every judge in this Court has confirmed that Commerce may lawfully deduct Section 301 duties from U.S. sales prices when that issue has arisen in other appeals, as Dingli concedes. *See* IDM at cmt. 10, Appx___; *see also* DOJ Br. at 60–67; Dingli Br. at 57. Because those decisions are wholly consistent with, and

indeed mandated by, the Federal Circuit's decision in *Borusan Mannes-mann Boru Sanayi ve Ticaret A.S. v. United States*, 63 F.4th 25 (Fed. Cir. 2023), this Court should join in their unanimous holdings and affirm Commerce's determination to deduct Section 301 duties from Dingli's U.S. sales prices in this appeal.

## IV.   ARGUMENT

### A.   Commerce Reasonably and Lawfully Selected Turkey as the Primary Surrogate Country

Dingli's challenges to Commerce's selection of Turkey as the primary surrogate country were thoroughly and reasonably addressed by Commerce in its IDM.

In response to the argument that Turkish import data are distorted by hyperinflation, *see* Dingli Br. at 19–33, Commerce reasonably explained that "inflation cannot automatically preclude the consideration of Türkiye as a primary surrogate country," and Dingli failed to demonstrate that hyperinflation in Turkey (on a macro level) distorted the Turkish import data on which Commerce relied, *see* IDM at cmt. 1, Appx___; *see also* DOJ Br. at 27–31.

In response to the argument that hyperinflation distorted Turkish financial statements, *see* Dingli Br. at 33–42, Commerce found no record

evidence contradicting the Turkish accounting and auditing standards authority's determination that it was unnecessary to adjust for inflation during the relevant period, and explained that Dingli again failed to demonstrate that hyperinflation on a macro level had distorted the financial statements at issue, *see* IDM at cmt. 2, Appx___; *see also* DOJ Br. at 31–34.

In response to the argument that Turkish financial statements were also distorted by countervailable subsidies, *see* Dingli Br. at 42–47, Commerce explained that subsidy programs in the abstract are not disqualifying, and Dingli failed to demonstrate that any statement at issue had been impacted by a countervailable subsidy here, *see* IDM at cmt. 2, Appx___; DOJ Br. at 35.

Finally, in response to the argument that Commerce should have selected Bulgaria as the primary surrogate country, *see* Dingli Br. at 47–55, Commerce thoroughly explained the deficiencies in the Bulgarian data that reasonably supported Commerce's determination to select Bulgaria as the secondary surrogate country, *see* IDM at cmt. 3, Appx___; *see also* DOJ Br. at 27, 32–35.

Because the United States has thoroughly demonstrated that Commerce's primary surrogate country determination was supported by substantial evidence and in accordance with law, the Coalition joins in the United States' brief on the above aspects of Dingli's appeal. The Coalition further notes that, despite Dingli's and similar challenges in other appeals, Commerce continues to select Turkey as the primary surrogate country in administrative reviews, which this Court has affirmed as lawful under the governing statutory framework. *See Tianjin Magnesium*, 2026 WL 711052, at \*10–11 ("Commerce . . . is aware of 'the inflationary environment in Türkiye,' but noted that 'the country has remained on Commerce's surrogate country list for investigative periods dating back to at least 2019 and has been used as a surrogate country in multiple proceedings.' Given plaintiffs' failure to demonstrate that the inflationary environment in Türkiye is grounds for its disqualification, the court sustains on this point." (citations omitted)).

## B.    Dingli Lacks Standing to Challenge Commerce's Use of Cohen's *d*

Dingli's appeal from Commerce's application of the Cohen's *d* test, in light of the Federal Circuit's decision in *Marmen*, 134 F.4th 1334, must

be dismissed for lack of standing. Count Four of Dingli's Complaint alleges that Commerce's application of the Cohen's *d* test to Dingli's U.S. sales was unsupported by substantial evidence and not in accordance with law. *See* Pl.'s Compl. ¶ 25 (Jan. 8, 2025), ECF No. 10. Dingli's opening brief devotes a total of four sentences to support that claim. *See* Dingli Br. at 55–56. It asserts (i) that the Federal Circuit held in *Marmen* that it is unreasonable for Commerce to rely on the Cohen's *d* test when the statistical assumptions underlying that test have not been met (Sentences 1 and 2); (ii) the Federal Circuit consequently vacated the results underlying *Marmen* and ordered Commerce to reconduct its differential pricing analysis in that proceeding without the use of Cohen's *d* (Sentence 3); and (iii) "{a}s a result of this decision, this Court should order remand for Commerce to recalculate Dingli's margin without using the invalidated Cohen's *d* test" here (Sentence 4). *Id.*

Dingli's brief, conclusory argument fails to demonstrate either that *Marmen* controls—*i.e.*, that the statistical assumptions underlying the Cohen's *d* test were not satisfied in this case—or that Commerce's application of Cohen's *d* actually impacted the Final Results. As such, Dingli has failed to develop this argument, and it is waived. *See, e.g., United*

*States v. Great Am. Ins. Co. of New York*, 738 F.3d 1320, 1328 (Fed. Cir. 2013) ("It is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived."); *Home Prods. Int'l, Inc. v. United States*, 36 CIT 665, 673, 837 F. Supp. 2d 1294, 1301 (2012) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.") (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).

More fundamentally, Dingli has failed to establish either injury in fact or redressability with regard to this claim, depriving the Court of jurisdiction. Even on review from final agency action, "an appellant must meet 'the irreducible constitutional minimum of standing'," to satisfy the Court of its jurisdiction to hear a claim. *Argentum Pharms. LLC v. Novartis Pharms. Corp.*, 956 F.3d 1374, 1376 (Fed. Cir. 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992)). "To prove standing, {Dingli} bears the burden of showing that

9

it has '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision'." *Id.* (quoting *Spokeo, Inc. v Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016)).

Injury in fact requires Dingli to show that it has "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* (quotations and alterations omitted); *see also SolarWorld Ams., Inc. v. United States*, 962 F.3d 1351, 1359 (Fed. Cir. 2020) ("In the antidumping context, a party challenging a purported error by Commerce must show that it was harmed as a result of the error."). Redressability requires a showing "that prospective relief will remove the harm." *Warth v. Seldin*, 422 U.S. 490, 505, 95 S. Ct. 2197, 2208, 45 L. Ed. 2d 343 (1975); *see also Timken Co. v. Regan*, 5 CIT 4, 7 (1983) ("{C}oupled with the absence of any legally redressable prejudice to Timken resulting from the liquidations, the court held that liquidation of those entries, though contrary to Customs Service instructions and advice, amounted to harmless error.").

"The party invoking federal jurisdiction bears the burden of establishing these elements . . . with the manner and degree of evidence required

10

at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. A motion for judgment on the agency record under this Court's Rule 56.2 is a motion for summary judgment. *See* CIT Rules 56–56.2; *see also, e.g.*, *Novolipetsk Steel Pub. Joint Stock Co. v. United States*, 483 F. Supp. 3d 1281, 1283 (Ct. Int'l Trade 2020) ("Before the court is Plaintiffs Novolipetsk Steel Public Joint Stock Company ('NLMK') and NOVEX Trading (Swiss) SA's ('NOVEX') Rule 56.2 motion for summary judgment on the agency record{.}"). As such, to demonstrate standing at this stage, Dingli "can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence *specific facts*{.}" *Lujan*, 504 U.S. at 561 (emphasis added) (quotations omitted).

Here, Dingli has proffered no facts demonstrating its standing to bring this claim. It has not argued, much less demonstrated, that the statistical assumptions underlying the Cohen's $d$ test were not met (to invoke *Marmen*) or that Commerce's application of Cohen's $d$ in fact impacted the Final Results. And the unrefuted agency record confirms that it did not: the IDM explained that, after applying the Cohen's $d$ test, Commerce found "no meaningful difference between the weighted average dumping margin calculated using the average-to-average methodology and the

11

weighted-average dumping margin calculated using the alternative average-to-transaction methodology" and thus applied "the average-to-average method for all U.S. sales to calculate the weighted-average dumping margin for Dingli in these final results." IDM at cmt. 9, Appx___. As such, "the results of the Cohen's *d* test did not affect {Commerce's} use of the average-to-average method{.}" *Id.*

Under identical circumstances, this Court has dismissed other complainants' appeals from Commerce's use of Cohen's *d* for lack of standing. *See Neimenggu Fufeng Biotechnologies Co. v. United States*, 741 F. Supp. 3d 1354, 1378 (Ct. Int'l Trade 2024) ("Even if Commerce erred in applying the Cohen's *d* test, Fufeng does not establish how that error would constitute an injury in fact, let alone one that would likely to be redressed by a favorable judicial decision. This is because the precise administrative outcome that Fufeng seeks—Commerce's application of the A-A method as opposed to the A-T method—has already occurred." (quotation omitted)); *Best Mattresses Int'l Co. v. United States*, 622 F. Supp. 3d 1347, 1368 (Ct. Int'l Trade 2023) ("Because Commerce ultimately applied the method of calculation that Plaintiffs requested, and Commerce's use of

12

the Cohen's *d* test is not dispositive to the final dumping margin, the alleged harm of a potentially misapplied Cohen's *d* test amounts to a bare procedural violation and does not entail a degree of risk sufficient to meet the concreteness requirement." (quotation omitted)). Because the Court lacks jurisdiction over Dingli's Count Four, it must be dismissed.

### C. Commerce Lawfully Deducted Section 301 Duties from U.S. Price

Dingli's opposition to Commerce's deduction of Section 301 duties from the U.S. price of subject merchandise has also been unanimously rejected by the Court in prior appeals. In *Shanghai Tainai Bearing Co. v. United States*, 658 F. Supp. 3d 1269 (Ct. Int'l Trade 2023), then-Judge Vaden held that Section 301 duties are "United States import duties," and thus are properly deducted from U.S. prices, for the reasons articulated by the Federal Circuit in *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 63 F.4th 25 (Fed. Cir. 2023). In *Borusan*, the Federal Circuit affirmed Commerce's deduction of analogous Section 232 duties from U.S. price because the implementing Presidential Proclamation made "clear that the {Section 232} duty newly being imposed was to add to, and not partly or wholly offset, the antidumping duties that would be due

13

without the new duty." *Shanghai Tainai*, 658 F. Supp. 3d at 1292 (quoting *Borusan*, 63 F.4th at 34). *Not* deducting Section 232 duties would have reduced the dumping margin by effectuating a greater U.S. price of the subject producer's merchandise. *Id.* at 1292–93. Accordingly, the Federal Circuit held that failure to deduct Section 232 duties from U.S. price would have violated the implementing instrument's requirement that the duties add, rather than subtract from, antidumping duties. *Id.*

Applying the Federal Circuit's holding and analysis in *Borusan*, Judge Vaden concluded that the Notice of Action enacting Section 301 duties compels the same conclusion. That is, the Notice of Action expressly refers to the Section 301 duty as an "additional duty" and expressly instructs that the duty "apply in addition to all other applicable duties," tracking the language of the Proclamation at issue in *Borusan*. *Id.* at 1293. Because "*Borusan* instructs that it is the text of the legal order levying duties that is paramount," Judge Vaden affirmed Commerce's determination to deduct Section 301 duties from U.S. price:

> If the legal instrument enacting statutory duties provides that such duties are intended to be additional to existing duties, then it is reasonable for Commerce to treat them as "United States import duties" and deduct them from the U.S.

14

price when calculating dumping margins. This principle, as elucidated in *Borusan*, extends beyond Section 232 duties and applies to other statutory duties. Here, "the particular exercise of the authority" to enact the Section 301 duties at issue intended for these duties to be additional to antidumping duties. The Court therefore affirms Commerce's determination.

*Id.* at 1294.

Every subsequent decision to have considered the issue has reached the same conclusion. *See Neimenggu*, 741 F. Supp. 3d at 1383 ("{T}he List 3 Duty"—*i.e.*, Section 301 duty—"on xanthan gum is a remedy that supplements, rather than substitutes, any antidumping duties that Commerce imposes pursuant to 19 U.S.C. § 1673."); *Shanghai Tainai Bearing Co. v. United States*, No. 23-00020, 2024 WL 5154030, at *11 (Ct. Int'l Trade Dec. 18, 2024) ("For the same reasons stated in *Tainai I*, the Court sustains Commerce's decision to deduct the Section 301 duties from U.S. price here."); *Jinko Solar Imp. & Exp. Co. v. United States*, 701 F. Supp. 3d 1367, 1392 (Ct. Int'l Trade 2024) ("{T}he text of the notice of determination pursuant to Section 301 indicates that the Section 301 duties imposed are to be in addition to normal duties.").

Dingli acknowledges these prior decisions, but argues they are subject to further appeal, and, in any event, Dingli disagrees with their results.

15

Dingli Br. at 57. For the reasons laid out in the Court's prior, well-reasoned decisions, which are reinforced in the United States' brief in this appeal, Commerce's deduction of Section 301 duties from U.S. price should be sustained. *See* DOJ Br. at 60–67.

*First*, the Federal Circuit in *Borusan* rejected the contention that treating Section 232 duties as "United States import duties" violated the framework articulated in *Stainless Steel Wire Rod from Korea*, 69 Fed. Reg. 19,153 (Dep't Commerce Apr. 12, 2004) (final results of antidumping duty admin. rev.), and affirmed in *Wheatland Tube Co. v. United States*, 495 F.3d 1355 (Fed. Cir. 2007). *See Borusan*, 63 F.4th at 36 ("In the present matter, as in the earlier one, the duty's treatment under § 1677a(c)(2)(A) is effectively determined by the President in exercising the broad power to shape the particular duty imposition, as Commerce suggested it should be, in a passage in *SWR Korea* that we quoted in *Wheatland*."); *accord Shanghai Tainai*, 658 F. Supp. 3d at 1294 ("*Borusan* instructs that it is the text of the legal order levying duties that is paramount; and it is unnecessary for a reviewing court to apply the *Wheatland Tube* factors where that text has spoken clearly."); *cf.* Dingli

16

Br. at 57–63 (analyzing Section 301 duties pursuant to *Stainless Steel Wire Rod from Korea* and *Wheatland Tube* factors).

*Second*, *Borusan* also rejected the contention that "double counting" would result from deeming Section 232 duties a United States import duty and subtracting them from U.S. price. *See* 63 F.4th at 35 ("We conclude that the only fair reading of Proclamation 9705 is that, when applied to an article covered by antidumping duties, the Proclamation 9705 and antidumping duties must together result in a full imposition of both duties."); *see also id.* at 30 (noting Commerce's determination that "antidumping duties and section 232 duties serve *separate and distinct functions*, so there would be no overlap between the two in providing the remedies sought by each, and *hence no double counting*" (emphasis added) (quotations omitted)); *cf.* Dingli Br. at 65–66. So, too, with Section 301 duties. Where the text of the legal order levying duties makes clear that they are intended to be additional to antidumping duties, a double-counting argument is necessarily foreclosed. *See Shanghai Tainai*, 658 F. Supp. 3d at 1294 ("{T}he particular exercise of the authority to enact the Section 301 duties at issue intended for these duties to be additional to antidumping duties." (quotation omitted)); *Jinko Solar*, 701 F. Supp. 3d

17

at 1392 ("{T}he text of the notice of determination pursuant to Section 301 indicates that the Section 301 duties imposed are to be in addition to normal duties.").

*Third*, Dingli complains that Commerce "did not rely on its formal notice-and-comment rulemaking authority to determine whether Section 301 duties are 'United States import duties' for purposes of 19 U.S.C. § 1677a(c)(2)(A), departing from its prior practice of posting a notice requesting comments when dealing with similar tariffs." Dingli Br. at 66. Dingli further notes that a World Trade Organization ("WTO") panel found section 301 duties on certain products unlawful—although it acknowledges " 'WTO findings are not self-executing under U.S. law.' " *Id.* at 68–69 (quoting IDM at 10, Appx___). Commerce appropriately rejected Dingli's contentions that its deduction of Section 301 duties from U.S. price was contrary to law and procedurally defective. *See* IDM at 44–46, Appx___.

With regard to Dingli's proffered WTO decision, Commerce has previously explained that "{a}rguments before Commerce concerning the legality of section 301 duties are not relevant because Commerce is not the

authority imposing these duties." Issues and Decision Memorandum accompanying *Crystalline Silicon Photovoltaic Cells, Whether Or Not Assembled Into Modules from the People's Republic of China*, 88 Fed. Reg. 43,302, (Dep't Commerce July 7, 2023) (final results of antidumping duty admin rev. and final deter. of no shipments; 2020-2021) ("*Solar Modules from China* IDM"). Rather, "Congress adopted an explicit statutory scheme in the URAA for addressing the implementation of WTO reports," pursuant to which "{o}nly Congress and the Administration can decide whether to implement a WTO panel recommendation and, if so, how to implement it." IDM at 46, Appx ___. In short, absent implementation by Congress and the Administration, Dingli's proffered WTO decision has no impact on this case. As long as Section 301 duties remain U.S. law, Commerce appropriately carried out its duty to enforce them.

With regard to the argument that Commerce did not rely on formal notice-and-comment rulemaking in determining the treatment of Section 301 duties, Commerce has previously explained that "it was under no obligation to do so" and instead has "provided interested parties in {each} review the opportunity to comment on its treatment of section 301 duties therein," *Solar Modules from China* IDM at 36, as Commerce did here.

19

That is because "antidumping investigations are not subject to the APA's notice and comment requirement." *Jiaxing Bro. Fastener Co. v. United States*, 961 F. Supp. 2d 1323, 1331 (Ct. Int'l Trade 2014) (citing 19 U.S.C. § 1677c(b)).

Rejecting the same argument as applied to Commerce's treatment of Section 232 duties, the Court explained:

> Commerce was not required to engage in notice-and-comment rulemaking to deduct Section 232 duties from Deacero's U.S. price. Notice-and-comment procedures do not apply in anti-dumping administrative procedures because they are fact-based, investigative activities. *See Jiaxing Brother Fastener Co.*, 961 F. Supp. 2d at 1331. The decision to deduct Section 232 duties as import duties is not a new policy because the antidumping statute requires Commerce to deduct import duties. *See* 19 U.S.C. § 1677a(c)(2)(A). There was no agency statement or rule necessary to announce because Commerce was only complying with its statutory duty, the language of Proclamation 9705, and its interpretative rule that Section 232 duties were import duties. *See* 5 U.S.C. § 553. Accordingly, Commerce did not fail to comply with the APA.

*Deacero S.A.P.I de C.V. v. United States*, No. 20-03924, 2021 WL 6067010, at *5 (Ct. Int'l Trade Dec. 20, 2021).

For all of these reasons, the Court should join in the unanimous rulings to date affirming Commerce's determination to deduct Section 301

duties from U.S. price as supported by substantial evidence and in accordance with law.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Dingli's motion for judgment on the agency record and sustain the corresponding aspects of Commerce's final results.

Respectfully submitted,

*/s/ Timothy C. Brightbill*
Timothy C. Brightbill, Esq.
Laura El-Sabaawi, Esq.
Enbar Toledano, Esq.
Theodore P. Brackemyre, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for the Coalition of American Manufacturers of Mobile Access Equipment*

Dated:  April 23, 2026

Ct. No. 24-00221

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Defendant-Intervenor's Response to Plaintiff's Motion for Judgment on the Agency Record, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2026), is 4,101 words.

The undersigned also certifies that this submission was not prepared with the assistance of a generative artificial intelligence program based on natural language prompts—such as, but not limited to, ChatGPT or Google Bard.

*/s/ Timothy C. Brightbill*
(Signature of Attorney)

Timothy C. Brightbill
(Name of Attorney)

*Coalition of American Manufacturers*
*of Mobile Access Equipment*
(Representative Of)

April 23, 2026
(Date)